UNITED STATED DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAISY RIVERA | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE PORTER AND CHESTER | ) | |
| INSTITUTE, INC. | ) | |
| Defendant. | ) | |
| | ) | MARCH 31, 2026 |

## COMPLAINT

### I. INTRODUCTION

1. This is a civil action for money damages brought on behalf of the plaintiff, Daisy Rivera, for disability discrimination under Section 504 of the Rehabilitation Act of 1973 and breach of contract and breach of the covenant of good faith and fair dealing in violation of Connecticut law.

### II. JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. Plaintiff also requests this Court to exercise supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

3. Pursuant to 28 U.S.C. § 1391(b), venue is proper within this District because the parties are in Connecticut and all conduct underlying plaintiff's claims occurred in Connecticut.

### III. PARTIES

4. During all times mentioned herein, plaintiff was a citizen of the United States, residing in Stratford, Connecticut. At all times mentioned herein, plaintiff is and was diagnosed with Autism Spectrum Disorder ("ASD"), Attention-Deficit Hyperactivity Disorder ("ADHD"), and Psychogenic Non-Epileptic Seizures ("pseudoseizures").

UNITE LAW LLC
1 SCHOONER LANE, SUITE C, MILFORD, CT 06460
TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039

5. Defendant, The Porter and Chester Institute, Inc. ("Defendant" or "PCI") is a stock corporation with its principal place of business located at 2080 Silas Deane Highway, Suite 302, Rocky Hill, CT 06067, and is an in-person and online occupational education company that owns and operates schools offering postsecondary programs for students at several Connecticut-based campuses, including a campus located at 156 Boston Avenue, Bridgeport, CT 06610.

### IV. FACTUAL ALLEGATIONS

6. In or around April 2024, the plaintiff enrolled in and commenced a 15-month Licensed Practical Nursing Program ("LPN") at PCI's Bridgeport campus.

7. At all times relevant herein, Plaintiff is and was diagnosed with Autism Spectrum Disorder ("ASD"), Attention-Deficit Hyperactivity Disorder ("ADHD"), and Psychogenic Non-Epileptic Seizures ("pseudoseizures").

8. The aforementioned medical conditions constitute disabilities under the Americans with Disabilities Act ("ADA").

9. During the admissions process for the LPN program, and prior to the plaintiff's enrollment and commencement in the program, the plaintiff informed PCI that she experienced seizures. She was told by PCI's admissions representative that this would not affect her eligibility to fully participate in the LPN program.

10. Shortly after classes began in or around April 2024, the plaintiff began to experience episodic seizures during classes and clinical rotations.

11. In or around May 2024, the plaintiff was diagnosed with ADHD and ASD. Upon her diagnoses, she immediately informed PCI about these conditions.

12. In or around early June 2024, the plaintiff experienced a seizure during a clinical rotation at St. Joseph's which was witnessed by her PCI instructor and several classmates.

**UNITE LAW LLC**
**1 SCHOONER LANE, SUITE C, MILFORD, CT 06460**
**TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039**

13. As a result of her seizure in June 2024, PCI requested the plaintiff provide medical documentation to confirm she was being seen by a neurologist and was fit to return to her classes and clinical rotations.

14. On or around June 3, 2024, the plaintiff's primary care physician provided PCI with a doctor's note informing them that the plaintiff was being worked up for seizures, planning to be seen by a neurologist, and should be allowed frequent breaks during rotation to help with decreasing stress that could be precipitating her symptoms.

15. Based upon the plaintiff's medical documentation, PCI allowed her to return to her clinical rotations without restrictions.

16. Subsequently, on or around August 1, 2024, the plaintiff's treating neurologist provided PCI with a doctor's note affirming that she had been evaluated on June 20, 2024, and was cleared to continue to attend classes and clinical rotations without restrictions.

17. Thereafter, the plaintiff continued to occasionally experience episodic seizures in the classroom or clinical rotations that were triggered by instances of overstimulation and/or stress.

18. When the plaintiff's instructors witnessed the plaintiff experience a seizure during a clinical session, they proceeded to remove her from the clinical site and treated these episodes as if they were issues with the plaintiff's behavior and/or professionalism.

19. In or around February 2025, the plaintiff attempted to formally document requests for accommodations for her medical conditions (i.e., seizures, ADHD, and ASD) including breaks (as needed) during episodes of stress, and support in overstimulating environments (*i.e.*, noise cancellation headphones, etc.).

20. The plaintiff asked PCI staff for assistance in filling out the necessary paperwork to request accommodations under the ADA; however, the plaintiff received little to no guidance on the process.

**UNITE LAW LLC**
**1 SCHOONER LANE, SUITE C, MILFORD, CT 06460**
**TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039**

21. The plaintiff did, however, meet with one of her instructors, Dr. Beckford, shortly after experiencing the seizure during clinical in June 2024. During this meeting, the plaintiff explained the accommodations she needed for her medical conditions. Dr. Beckford took notes during this meeting; however, the plaintiff never received any follow-up from Dr. Beckford or anyone else at PCI regarding the meeting, nor were any accommodations for the plaintiff's medical conditions formally implemented.

22. On or around February 17, 2025, the plaintiff experienced a seizure during a clinical session.

23. Immediately after the plaintiff's seizure, her instructor, Dr. Melissa Wilcoxson, asked the plaintiff "how [she] was going to make it as a nurse."

24. The following day, Dr. Wilcoxson gave the plaintiff five (5) written warnings, including a warning for leaving clinic ninety (90) minutes early the prior day after experiencing the aforementioned seizure. Moreover, Dr. Wilcoxson removed the plaintiff from her clinical rotation.

25. Subsequently, on or around February 20, 2025, the plaintiff's treating medical provider provided a doctor's note to PCI stating that she had been evaluated on February 19 and was cleared to return to the program, was medically stable, and was fully able to perform her nursing duties. Moreover, the note again requested that the plaintiff be allowed frequent breaks in moments/episodes of stress during rotations to avoid precipitation of symptoms while accommodations were being reviewed.

26. On or around March 10, 2025, PCI approved accommodations for the plaintiff's disabilities including breaks, as needed, both in the classroom and during clinics/labs, in response to symptom presentation, as well as noise reducing headphones to be used in specified instances.

27. While there were efforts to implement the plaintiff's requested accommodations in the classroom setting, there was no such effort to implement them during clinicals/labs.

UNITE LAW LLC
1 SCHOONER LANE, SUITE C, MILFORD, CT 06460
TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039

28. On or around May 7, 2025, the plaintiff experienced a seizure during another clinical session.

29. Upon information and belief, while the plaintiff was experiencing the aforementioned seizure, one of her instructors pulled aside the plaintiff's fellow students and encouraged each of them to send e-mails to PCI stating that the plaintiff was a disruption to their learning so "the school would have no choice but to remove her [from the program]."

30. After the incident on May 7, the plaintiff was able to return to the same clinical site without any concerns raised by PCI; however, not long thereafter, PCI informed the plaintiff and other students assigned to that clinical site that they were being removed from their assignments at the location.

31. After a few weeks, the other students began to be reassigned to new clinical sites; however, the plaintiff was not notified of a reassignment.

32. The plaintiff followed up with PCI about the delay in her placement to a new clinical site and was repeatedly told that the staff was "doing everything they could" to find an assignment for her.

33. When the plaintiff asked whether the accommodations for her medical condition were causing the delay in her re-assignment and asked if she should consider adjusting said accommodations to ease the process, the plaintiff was reassured by PCI that there was no issue related to her requested accommodations.

34. On or around June 10, 2025, the plaintiff attended a "check-in" meeting with PCI regarding her accommodations.

35. During this meeting, the plaintiff was asked how her requested accommodations were "working for [her]." The plaintiff explained that the accommodations she had requested were working well in the classroom and clarified that her requested accommodations had not been implemented in the clinical setting.

**UNITE LAW LLC**
**1 SCHOONER LANE, SUITE C, MILFORD, CT 06460**
**TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039**

36. About a week later, on or around June 17, 2025, the plaintiff was invited to attend a Zoom meeting during which she was informed she was being dismissed from the LPN program.

37. After the meeting, the plaintiff received a formal dismissal letter from PCI explaining that her requested and approved accommodation of breaks, as needed, in response to symptom presentation was "not reasonable and [could not] be safely implemented," and, as such, PCI was "respectfully dismiss[ing] [her] from the nursing program."

38. The dismissal letter specifically referenced the seizure the plaintiff experienced during her clinical rotation on May 7.

39. The dismissal letter further stated that PCI had been unable to find a new location for the plaintiff to complete her clinical assignments because they had been unable to identify a contracted site currently accepting students in her placement "who [would] accept a student with [her] reported diagnosis."

40. The plaintiff's treating medical providers continually affirmed to PCI that the plaintiff was and is medically and professionally capable of being a nurse and that she is able to safely perform nursing duties and attend clinical placements with reasonable accommodations. The plaintiff was expected to graduate from the LPN program on or around July 3, 2025 – only a few weeks after she was dismissed from the program by PCI.

41. Prior to the plaintiff's dismissal from the program, she received positive evaluations from her instructors and excellent grades on her exams.

42. Despite PCI's knowledge of the plaintiff's medical conditions and her requests for accommodation in the form of frequent breaks, PCI never formally implemented accommodations to support her participation in the program.

43. Despite PCI's knowledge of the plaintiff's medical conditions and her requests for accommodation in the form of frequent breaks, PCI failed to communicate with the plaintiff or

**UNITE LAW LLC**
**1 SCHOONER LANE, SUITE C, MILFORD, CT 06460**
**TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039**

engage in an interactive process to determine what, if any, reasonable accommodations could be made for her medical conditions.

44. As a result of the plaintiff's medical conditions and PCI's failure to accommodate said medical conditions, the plaintiff was dismissed from clinical sites by her instructors when she experienced seizures, thus creating constant disruptions to her clinical training such that she was unable to progress through the program at the same speed as her classmates.

45. The plaintiff's program transcripts, as well as records from the Institutional Student Finance Corporation, the entity who managed the plaintiff's tuition payments to PCI, state the plaintiff withdrew from the LPN program on June 11, 2025 – a week prior to the aforementioned Zoom meeting which was held on June 17, 2025, when she was dismissed from the program.

46. Contrary to what the Plaintiff's program transcripts state, the Plaintiff did not withdraw from the LPN program with PCI, but rather, was dismissed from the program.

47. PCI failed to provide the plaintiff with reasonable accommodations for her disability to allow her to participate in and complete the LPN program.

48. PCI wrongfully dismissed the plaintiff from the LPN program due to her disability.

49. As a result of the foregoing actions, the plaintiff has suffered, and continues to suffer, economic damages and emotional distress.

50. As a result of the foregoing actions, the plaintiff was precluded from completing the LPN program at PCI and, thus, precluded from eligibility for licensure as a LPN, negatively impacting her future earning potential.

## V.  STATEMENT OF CLAIMS

**COUNT ONE:**          **VIOLATION OF THE REHABILITATION ACT OF 1973, SECTION 504(a)**

1.-44. Paragraphs 6 through 50 are hereby incorporated by reference and made paragraphs 1 through 44 of Count One, as if fully set forth herein.

7

45. Upon information and belief, the defendant participates in a program receiving federal financial assistance or funding.

46. Plaintiff is a qualified individual as defined by the Rehabilitation Act, with disabilities recognized thereunder (*i.e.*, ASD, ADHD, and Psychogenic Non-Epileptic Seizures), and, as such, is entitled to reasonable accommodations, program accessibility, and equal opportunities in both an educational and employment context.

47. The plaintiff was able to complete the educational requirements of the LPN program and perform the essential functions, program, and activities of a LPN student and a LPN with or without a reasonable accommodation.

48. At the time of her enrollment, PCI had actual knowledge of the plaintiff's disability, and the need for reasonable accommodation thereafter.

49. At all material times, PCI had notice of the plaintiff's disabilities but denied the plaintiff the opportunity to participate in or benefit from its programs and activities and failed or refused to provide the plaintiff with reasonable accommodations.

50. PCI could have easily provided reasonable accommodations and fair access to its LPN program to the plaintiff without requiring significant difficulty, expense, or undue hardship.

51. PCI's failure and/or refusal to provide the plaintiff with reasonable accommodations and fair access to its programs is discriminatory.

52. PCI was aware of the plaintiff's disability, and of the reasonable accommodations necessary therefore. Nevertheless, PCI failed, refused or neglected to provide reasonable accommodations to the plaintiff, and, ultimately, dismissed the plaintiff from its program.

**UNITE LAW LLC**
**1 SCHOONER LANE, SUITE C, MILFORD, CT 06460**
**TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039**

53. As a result of PCI's failure to provide reasonable accommodations to the plaintiff and dismissal of the plaintiff from the LPN program, the plaintiff was unable to complete her education, obtain proper licensure, and commence her career.

54. PCI knew or should have known that failure and/or refusal to provide the plaintiff with reasonable accommodations was substantially likely to harm the plaintiff's federally protected rights, but failed to act upon that likelihood after notice by the plaintiff of the accommodations needed.

55. PCI knew or should have known that dismissing the plaintiff from the LPN program on the basis of her request for reasonable accommodations and/or her disability was substantially likely to harm the plaintiff's federally protected rights, but failed to act upon that likelihood.

56. The conduct of PCI constitutes violation of the rights secured to the plaintiff by provisions of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq.

57. As a direct and proximate result of PCI's conduct, the plaintiff has sustained substantial harm, including, but not limited to deprivation of her educational degree, loss of the ability to obtain licensure to practice her profession, loss of employment opportunities, severe economic losses including lost wages, loss of her reputation in her chosen field, incidental and consequential damages and severe emotional distress.

58. Plaintiff seeks monetary damages as a result of the defendant's unlawful conduct.

**COUNT TWO:**     **BREACH OF CONTRACT**

1.-44. Paragraphs 1 through 44 of Count One are hereby incorporated by reference and made paragraphs 1 through 44 of Count Two, as if fully set forth herein.

45. In or around April 2024, the plaintiff and the defendant entered into a contract whereby the plaintiff would be enrolled in the defendant's LPN Program and the defendant would provide academic courses and clinical rotations to the plaintiff as part of the program.

UNITE LAW LLC
1 SCHOONER LANE, SUITE C, MILFORD, CT 06460
TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039

46. Pursuant to said contract, the defendant was obligated to teach and educate the plaintiff in the stated field.

47. The defendant was further obligated to provide education to the plaintiff, culminating in its award of a degree to her.

48. The plaintiff was obligated to pay tuition to the defendant pursuant to the terms of said contract and met her obligations thereunder by paying her tuition.

49. The plaintiff applied to and enrolled as a student at PCI and paid all required tuition, fees, and expenses.

50. Per the "Enrollment Agreement" entered into by the plaintiff and the defendant on April 9, 2025:

> Porter and Chester may suspend or dismiss the Student because of unsatisfactory academic progress; failure to fulfill financial obligations; or non-compliance with any of Porter and Chester's regulations including, but not limited to, cheating, violence, or the threat of violence, or violation of the drug and alcohol policy or the professionalism expectations as described in the Steps to Success and the Catalog.

51. The plaintiff's application and enrollment as a student in PCI's LPN program was done in reliance on PCI's representations, and with the reasonable expectation that PCI would implement and enforce the provisions and policies set forth in its official publications, including its Non-Discrimination policy as stated in its Catalog and the terms laid out in its Enrollment Agreement, as well as all supporting and explanatory documents produced, published, and/or disseminated by PCI.

52. An expressed contract or, alternatively, a contract implied in law or in fact was formed between the plaintiff and PCI at the time the plaintiff was enrolled in, paid for, and started the LPN Program offered by PCI.

53. PCI breached its contract with the plaintiff, including in one or more of the following ways:

UNITE LAW LLC
1 SCHOONER LANE, SUITE C, MILFORD, CT 06460
TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039

a. Failing and/or refusing to provide the plaintiff with requested accommodations for her disability;

b. Dismissing the plaintiff from the program for reasons not provided in the "Termination" clause of the "Enrollment Agreement" between the plaintiff and PCI;

c. Dismissing the plaintiff from the program [one] week prior to plaintiff's expected graduation date;

d. Failing and/or refusing to find the plaintiff a new clinical placement;

e. Creating constant disruptions to the plaintiff's clinical training by dismissing her from clinical sites when she experienced a seizure;

f. Failing to engage in an interactive process to determine what, if any, reasonable accommodations could be made for the plaintiff's medical conditions; and,

g. Failing to accurately update PCI's records to reflect that Plaintiff was dismissed from the LPN program and did not voluntarily withdraw.

h. Failing to allow plaintiff to complete the LPN Program and receive her degree and certifications.

54. The plaintiff has performed all conditions required of her under the terms of PCI's programs, course requirements, Enrollment Agreement, and publications.

55. As a result of PCI's breach of its published policies and procedures as set forth above, the plaintiff has sustained monetary losses and other significant damages, including severe mental distress and anguish, loss of academic achievement, loss of employment opportunities, loss of earnings, and loss of reputation.

56. Plaintiff seeks damages as a result of the defendant's unlawful conduct.

**COUNT THREE:**    **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

1.-56. Paragraphs 1 through 56 of Count Two are hereby incorporated by reference and made

UNITE LAW LLC
1 SCHOONER LANE, SUITE C, MILFORD, CT 06460
TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039

paragraphs 1through 56 of Count Three, as if fully set forth herein.

57. The PCI publications, including its Non-Discrimination Policy, and the "Enrollment Agreement," contained an implied covenant of good faith and fair dealing pursuant to which PCI was obligated to deal with the plaintiff in a fair, reasonable, and equitable manner to ensure that the plaintiff received all benefits to which she was entitled under the PCI publications and the "Enrollment Agreement."

58. By engaging in the foregoing conduct, PCI callously, willfully, and deliberately disregarded the plaintiff's rights under the PCI publications and "Enrollment Agreement."

59. PCI's unreasonable and intentional conduct in failing to comply with its contractual obligations was in reckless, wanton, deliberate, malicious, and callous disregard of the plaintiff's rights, and constitutes a breach of the implied covenant of good faith and fair dealing present in the contracts.

60. Asa result of PCI's breach of the implied covenant of good faith and fair dealing, the plaintiff has sustained substantial monetary losses and other significant damages, including severe mental distress and anguish, loss of academic achievement, loss of employment opportunities, and loss of reputation.

61. Plaintiff seeks damages as a result of the defendant's unlawful conduct.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff claims judgment against the Defendant as follows:

    A.  Compensatory damages in an amount this Court shall consider just, fair, and reasonable;

    B.  Pre-judgment and post-judgment interest on her economic losses;

    C.  An award of her costs and reasonable attorney's fees; and

    D.  Such other relief as this Court shall consider to be fair and equitable.

UNITE LAW LLC
1 SCHOONER LANE, SUITE C, MILFORD, CT 06460
TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039

## <u>CLAIM FOR TRIAL BY JURY</u>

Plaintiff claims a trial by jury of the issues in this case.

THE PLAINTIFF,
DAISY RIVERA

BY:   */s/ Daniel J. Seiden*
     Daniel J. Seiden, Esq. (ct29122)
     dan@unitelawct.com

**UNITE LAW LLC**
**1 SCHOONER LANE, SUITE C, MILFORD, CT 06460**
**TELEPHONE: (203) 875-0201 • FACSIMILE: (860) 909-0039**